UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VENKATA MARAMJAYA,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendant. | Civil Action No. 06-2158 (RCL)<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT |

<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

The plaintiff agrees with the Defendants' said statement, except that contrary to the assertions in paragraph 7, nowhere in the application for alien employment certification is it indicated that the job offered requires a "four year college degree".

STATEMENT OF FACTS

On June 19, 2003, Covansys Corporation filed a petition with the defendant United States Citizenship and Immigration Services ("CIS") to classify plaintiff Maramjaya as a professional or skilled worker under section 203(b)(3)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(3)(A)(i).[1] Filed with the USCIS in support of this petition was, among other things, an application for alien employment certification offering employment as a Programmer Analyst to plaintiff Maramjaya, certified by the Secretary of Labor pursuant to section 212(a)(5)(A) of the Act, 8 U.S.C. § 1182(a)(5)(A) on Form ETA 750.This certification indicated that the qualifications needed to fill the proffered position were a "Bachelor's or equivalent in Computer Sc., MIS or Engrg" and 1 year experience in the job offered or in the alternative occupations of "Systems Analysis &/or programming &/or S/W Engrg &/or Computer Consulting" and "Work expr. with Java and DB2". Also filed in support of this petition was evidence that plaintiff Maramjaya held a Diploma in Electronics and Communication Engineering from the State Board of Technical Education and that he had completed the Sections A & B Examinations of the

---

[1] Unfortunately, the plaintiff is unable to cite to the Administrative Record for any of the factual assertions contained in this brief because the defendants have failed to serve upon it a copy of said record or, apparently, to file it with the Clerk of the Court.

2

Institution of Engineers (India) in 1995 and was so awarded Associate Membership in the Institution of Engineers (India).

Further submitted in support of this petition were foreign academic credentials evaluations from Foundation for International Services, Inc. and Multinational Educational and Information Services, Inc. concluding that plaintiff Maramjaya's completion of the Sections A & B Examinations of the Institution of Engineers (India) is equivalent to the award of a Bachelor of Engineering degree in Electronics Engineering from an accredited university in the United States.

Further submitted in support of this petition were letters from the following: Government of India Ministry of Education and Social Welfare stating that the Government of India recognizes that the passing of Sections A&B examinations of the Institution of Engineers (India) is at par with a Bachelor's Degree in the appropriate field of Engineering from a recognized Indian University; The Assistant Registrar of Osmania University certifying that passing Sections A&B of this examination is equivalent to a B.E. of

Osmania University; The Institution of Engineers (India) certifying that passing Sections A&B Examinations are equivalent to four-year Bachelor of Engineering or Bachelor of Technology degrees from Indian Universities; and a statement from said Institution's website listing the Indian Institutes and Universities that recognize Associate Membership in the  Institution of Engineers (India) as equivalent to a Bachelor's degree in Engineering.


Finally, submitted in support of this petition was evidence that the plaintiff Maramjaya possessed all of the experience required for the proffered position at the time of the filing of the form ETA 750. Nevertheless, on May 27, 2004 the Director of the CIS's Nebraska Service Center issued a decision denying the petition on the grounds that "the petitioner has not demonstrated that the beneficiary met the minimum requirements at the time Form ETA-750 was accepted."

Apparently the CIS issued this denial because it determined that Mr. Maramjaya's foreign education was not the equivalent of a U.S. bachelor's degree, merely because it was not obtained in a single 4 year baccalaureate degree program. Although the petitioner

subsequently appealed this decision to the CIS's Administrative

Appeals Office ("AAO"), it was affirmed by the AAO.

**ARGUMENT**

I.  PLAINTIFF'S COMPLAINT IS NOT MOOT

The defendants claim that the plaintiff's complaint is moot because

the beneficiary of the petition, not the petitioner has filed this

complaint and no evidence has been presented that the plaintiff

continues to seek employment with the petitioner as a programmer

analyst and that the beneficiary is currently employed by different

corporation which has filed an I-140 petition upon the plaintiff's

behalf which has been approved.  The defendants do not explain

how any of this moots the plaintiff's complaint nor even cite

authority for their arguments.


 A complaint is moot if it no longer presents "a case or controversy

under Article III, § 2, of the Constitution. 'This case-or-controversy

requirement subsists through all stages of federal judicial

proceedings, trial and appellate. . . . The parties must continue to

have a 'personal stake in the outcome' of the lawsuit.' *Lewis v.*

*Continental Bank Corp.,* 494 U.S. 472, 477-478, 108 L. Ed. 2d 400,

110 S. Ct. 1249 (1990). See also *Preiser v. Newkirk,* 422 U.S. 395, 401, 45 L. Ed. 2d 272, 95 S. Ct. 2330 (1975). This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Lewis,* supra, at 477." *Spencer v. Kemna,* 523 U.S. 1, 7 (U.S. 1998).

The plaintiff certainly continues to have a personal stake in the outcome of this lawsuit in that he will suffer an actual injury through the denial of Covansys Corporation's (Covansys) petition upon his behalf which is traceable to the actions of the defendants in denying that petition and is likely to be redressed by favorable judicial decision.

First, the fact that he is no longer employed by the petitioner is unrelated to the benefits which he can gain from the approval of this petition. One need not be currently employed by a petitioner to obtain permanent residency based upon its petition.  Rather, the petitioner need only intend to employ the beneficiary when he becomes a permanent resident.  "While the intent to work for the petitioning employer is a requirement for approval of the I-485, there is

no legal requirement that the beneficiary of an approved employment-based visa petition work for the sponsoring employer before receiving permanent residence status." "Memorandum For Regional Directors" from Michael A. Pearson, Executive Associate Commissioner, Office of Field Operations, Immigration and Naturalization Service re: Transferring Section 245 Adjustment Applications to New or Subsequent Family or Employment Based Immigrant Petitions (May 9, 2000) at 2.

Further, even if the beneficiary no longer intends to be employed by the petitioner or the petitioner no longer intends to employ the beneficiary when he becomes a permanent resident, the beneficiary still gains a benefit from the approval of the petitioner's petition upon his behalf in that the approval of Covansys's petition could reduce the time which it may take for him to become US permanent resident based upon the petition filed upon his behalf by Igate Mastech or any other petitioner.

The priority date for Covansys's I-140 is November 1, 2001, the date that Covansys's application for alien employment certification was filed with the Department of Labor.  8 C.F.R. § 204.5(d). The priority

date of an immigrant visa petition determines when the beneficiary will become eligible for permanent residency based upon that petition.  Generally speaking, one may not file an application for adjustment of status to permanent resident, nor may that application be approved, unless the priority date applicable to the petition filed upon the beneficiary's behalf is later than the visa cutoff date which is applicable to that classification.  8 C.F.R. § 245.1(g)(1).  Therefore there is a real benefit to be gained by the beneficiary in having an earlier priority date, since the priority date of any approved first, second or third employment based immigrant visa petition will transfer to any other such petition approved upon behalf of the beneficiary. 8 C.F.R.  § 204.5(e)(2). Covansys's November 1, 2001 priority date is a substantial improvement over the December 1, 2006 priority date of Igate Mastech's I-140 filed upon the plaintiff's behalf.   Therefore the actual injury which the plaintiff has suffered as result of the denial this petition is not only the opportunity to obtain permanent residency based upon an offer of employment from Covansys, effective upon the day he becomes a permanent resident, but also the loss of the opportunity to substantially improve the visa cutoff date applicable to Igate

Mastech's visa petition upon his behalf, and the concomitant loss of the opportunity to  potentially expedite the date upon which he may become a permanent resident.  Both of these injuries are likely to redressed by favorable judicial decision and therefore the case in controversy requirement of article III section 2 of the Constitution is satisfied and this action is not moot.

II.  PLAINTIFF HAS STANDING TO BRING THIS ACTION

To have standing to bring suit in federal court, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992) (quotations, citations, alterations, and footnote omitted). The plaintiff meets these requirements.

When an immigrant visa petition is filed, "the immigrant beneficiary is more than just a mere onlooker; it is her own status that is at

stake when the agency takes action on a preference classification petition." *Sanchez-Trujillo v. INS*, 620 F. Supp. 1361, 1363 (W.D.N.C. 1985). As the beneficiary of Covanys's I-140, the plaintiff lost a significant opportunity to receive an immigrant visa when the CIS denied the petition. This lost opportunity represents a concrete injury to plaintiff that is traceable to the CIS's conduct for all the reasons stated above and remediable by a favorable decision in this case. Accordingly plaintiff has standing in this matter.   *Abboud v. Immigration and Naturalization Service*, 140 F3d 843 (9th Cir.  1998); *Ghaly v. INS*, 48 F.3d 1426, 1434 n.6 (7th Cir. 1995) (alien has standing to raise judicial challenge to INS's denial of an employer's visa petition on the alien's behalf).


III.  DEFENDANTS' DECISION IS NOT IN ACCORDANCE WITH
      THE LAW IN THAT IT IS INCONSISTENT WITH LEGACY INS
      PRECEDENTS AND POLICY


The Immigration and Naturalization Service, the agency predecessor to the defendant CIS, has repeatedly held that "experience may be substituted for formal education" for the purpose of establishing that a petition beneficiary had the equivalent of a U.S. baccalaureate degree. *See, e.g. Matter of Sea, Inc.*, 19 I. & N. Dec. 817 (Com 1988), *Matter of Caron International, Inc.*, 19 I&N Dec.

791 (Comm. 1988),  *Matter of Portugues Do Atlantico Information Bureau, Inc.*, 19 I&N Dec. 194  (Comm. 1984), *Matter of Yaakov*, 13 I&N Dec. 203 (R.C. 1969), *Matter of Arjani,* 12 I&N Dec. 649 (R.C. 1967), *Matter of Sun*, 12 I&N Dec. 535,  (D.D. 1966), *Matter of Bienkowski*, 12 I&N Dec. 17 (D.D. 1966), and *Matter of Devnani*, 11 I&N Dec. 800 (Acting D.D. 1966).[2]

Although here the plaintiff relies solely upon foreign education to establish that he qualifies for the position, the INS's long history of permitting experience to be substituted for formal education for the purpose of establishing that a petition beneficiary had the equivalent of a U.S. baccalaureate degree demonstrates conclusively that it is not INS's (nor, therefore CIS's) policy that one may only establish the equivalent of a bachelor's degree through a single four year degree program.

Significantly, the defendants do not even respond to this fundamental flaw in their decision in the motion to dismiss. Rather,

---

[2] See also Matter of Rajagopalamenon 13 I&N Dec. 110 (D.D. 1968), holding that foreign educational credentials not including a single 4 year degree could be considered the equivalent of a Bachelor's

they cite to a series of unpublished, non-precedent decisions, which are neither publicly available nor even provided by the defendants in support of their brief.[3] However, as the CIS itself explained to its officers in its Adjudicator's Field Manual, unpublished AAO decisions are to be treated as mere "correspondence" in CIS decisionmaking, which are "advisory in nature, intended only to convey the author's point of view". Adjudicator's Field Manual at 3.4, accessed online on August 14, 2007 at http://www.uscis.gov/propub/ProPubVAP.jsp?dockey=724ce55f1a60168e48ce159d286150e2.

By contrast, precedent decisions, such as those cited by plaintiff above, are "binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material." *Id.* Therefore the defendants' citation of non-precedent decisions cannot explain their failure to adhere to principles set forth in eight (8) binding precedent decisions. An

---

[3] Further, the defendants neglect a recent AAO decision expressly finding that one may satisfy the requirement of a Bachelor's degree or its equivalent in a labor certification with qualifications other than a single four year degree, exactly as the plaintiff did in this case. In re [name not provided], A 98 128 936 (AAO July 14, 2007).

agency acts arbitrarily and capriciously when it departs from precedent without a reasoned explanation. *Graphic Communications Int'l Union, Local 554 v. Salem-Gravure*, 269 U.S. App. D.C. 162, 843 F.2d 1490, 1493 (D.C. Cir. 1988), cert. denied, 489 U.S. 1011 (1989); *Checkosky v. SEC (in Re Checkosky)*, 306 U.S. App. D.C. 144 (D.C. Cir. 1994). Therefore, by departing from over 2 decades of binding precedent decisions without explanation the defendants have acted in an arbitrary and capricious manner.

IV.  DEFENDANTS' DECISION IS NOT IN ACCORDANCE WITH THE LAW IN THAT IT IS INCONSISTENT WITH THE  DOL'S AND THE EMPLOYER'S  APPARENT INTENTIONS AS TO WHAT CONSTITUTES THE EQUIVALENT OF A BACHAELO'RS DEGREE

The Department of Labor and the employer, not the CIS, have the authority to set the requirements for the position proffered in the labor certification. *Castaneda-Gonzalez v. Immigration & Naturalization Service*, 183 U.S. App. D.C. 396 (D.C. Cir. 1977); *Madany v. Smith*, 696 F.2d 1008, 1015 (D.C. Cir. 1983),  *Rosedale & Linden Park Co. v. Smith*, 595 F. Supp. 829, 833 (D.C.D.C. 1984), *Grace Korean United Methodist Church v. Chertoff*, 437 F. Supp. 2d 1174 (D. Ore. 2005); *Snapnames.Com, Inc. v. Chertoff*, 2006 U.S. Dist. LEXIS 87199 **(**D. Ore. 2006). Therefore, it follows logically that the defendants should be bound by the Department of Labor and

the employer's apparent intent in interpreting those requirements. As the U.S. District Court for the District of Oregon explained in rejecting the CIS's decision that the requirement of a Bachelor's degree or its equivalent in a labor certification could only be satisfied by a single four year degree:

> "It is the employer, working under the supervision and direction of OED and DOL, that establishes the requirements for employment. CIS looks to education and experience requirements in the labor certification to determine whether the applicant falls within the skilled worker or professional classification. That determination should be "based on the requirements of training and/or experience placed on the job by the prospective employer, as certified by the Department of Labor." 8 C.F.R. § 204.5(l)(4). It is the responsibility of the employer, not CIS, to establish the criteria for the open position. It is undisputed that the Church intended the language "B.A. or equivalent" to include degree equivalency based on education and experience, because it drafted the labor certification with Park in mind. It is also not in dispute that Park possessed the equivalent of a bachelor's degree in theology based on her unique combination of education and relevant experience.
>
> "CIS does not have the authority or expertise to impose its strained definition of 'B.A. or equivalent' on that term as set forth in the labor certification. *Tovar v. U.S. Postal Service*, 3 F.3d 1271, 1276 (9th Cir. 1993) (stating that U.S. postal Service has no expertise or special competence in immigration issues); *Omar v. INS*, 298 F.3d 710, 714 (8th Cir. 2002), overruled in part on other grounds, *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004), (finding INS interpretation of criminal statute not entitled to deference). If any agency has the power to define the job qualifications set forth in a labor certification, it is the DOL, the agency responsible for reviewing and adjudicating the labor

certification.  Here, the only evidence before this court is that DOL and OED worked with the Church in drafting the labor certification and advertising the position, knowing full well Park's credentials. *Grace Korean United Methodist Church v. Chertoff*, 437 F. Supp. 2d 1174, 1179 (D. Or. 2005)."

Likewise, another Court rejecting CIS's position on this very same issue also concluded that the employer's intentions should control in interpreting the requirements of the position offered in the labor certification:

"That easier issue aside, the real question here concerns CIS' role in *interpreting* the labor certification. In this case, the AAO found Mr. Agarwal not qualified based on its interpretation of 'B.S. or foreign equivalent,' as stated in the labor certification. The agency argues it is entitled to interpret this phrase consistent with its understanding of similar language in its regulations. *See* 8 C.F.R. § 204.5(l)(2) (defining 'professional' as one who 'holds at least a United States baccalaureate degree or a foreign equivalent degree'). On the other hand, SnapNames argues that because it defined the educational requirements in the labor certification, the language should be construed in light of its understanding and not the agency's, which is based on regulatory language not applicable to 'skilled workers' petitions.

SnapNames has the better argument. CIS does not have the authority to define the particular employment position or the necessary qualifications for such. Rather, CIS must "examine the certified job offer exactly as it is completed by the prospective employer." *Rosedale & Linden Park Co. v. Smith,* 595 F. Supp. 829, 833 (D.C.D.C. 1984). ... Thus, in interpreting the labor certification, the agency must start

with the plain meaning of the petitioner's language, if such exists. Where the language is ambiguous, however, a question arises as to how much deference to afford the agency's interpretation. Relating back to an agency's statutory interpretation, defendants argue the court must defer to the agency so long as its interpretation is reasonable. *Az. State Bd. For Charter Schs.,* 464 F.3d at 1006. However, such deference is afforded in recognition that the agency has specific expertise over matters addressed in the statute it enforces. *Natural Res. Def. Council, Inc. v. U.S. E.P.A.,* 966 F.2d 1292, 1297 (9th Cir. 1992) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844 (1984)). The labor certification is not analogous to the agency's statute in this manner. The labor certification is an occupational assessment performed by DOL based on the requirements specified by the prospective employer and petitioner. CIS does not have any particular expertise in relation to an employer's needs or intent in defining employment positions. Likewise, it has no particular expertise as to the certification performed by DOL. Thus, there is no justification for affording deference to the agency's interpretation in this context. … As for the agency's second conclusion that 'B.S. or foreign equivalent' requires a single degree thereby precluding consideration of combined educational experiences, I find the labor certification's language ambiguous. On one hand, 'equivalent' is defined as 'equal in force, amount, or value.' Merriam-Webster's Collegiate Dictionary 423 (11th ed. 2005). Certainly it is possible for multiple educational experiences, as well a single degree, to be equal in amount or value to a U.S. baccalaureate. Further, 'equivalency' inherently means something different than 'sameness.' Otherwise, there is no need to specify 'B.S. or foreign equivalent;' 'B.S.' alone would suffice. On the other hand, in addition to requiring four years of college, SnapNames specified a degree requirement. This suggests that not only is the company interested in a quantitatively equivalent education, but also an equivalent result.

In resolving this ambiguity, the AAO stated: "Neither the

statute nor the conforming regulations allow for alternatives to the requirement of the specific degree required on the [labor certification application], whether the equivalency is based on work experience of a combination of lesser educational degrees and certifications, professional memberships or other training." AR at 168. The problem with this analysis, however, is that unlike the other employment visa categories yet to be discussed, there are no statutory or regulatory educational requirements for "skilled workers." Rather, educational requirements only arise in this context when specified by the prospective employer in the labor certification. Thus, the agency's interpretation of SnapNames's educational requirement should be informed by SnapNames's intent, to the extent possible, and not on the agency's understanding of similar but inapplicable regulatory language. *SnapNames.Com, Inc. v. Chertoff*, 2006 U.S. Dist. LEXIS 87199 (D. Or. 2006) (*17-26).

The Defendant CIS's determination that Mr. Maramjaya's education could not be considered the equivalent of a U.S. Bachelor's degree because it was not obtained in a single four year degree program is not in accordance with the law on this issue in that it failed to interpret the requirements for this position in a manner consistent with Department of Labor decisionmaking, which rejected the claim that the requirement of a bachelor's degree in a particular field or its equivalent could only be satisfied by a single four year degree in *Syscorp International*, 89-INA-212 (BALCA 1991). Further, Defendant CIS's determination that Mr. Maramjaya's education

could not be considered the equivalent of a U.S. Bachelor's degree because it was not obtained in a single four year degree program is not in accordance with the employer's intent in establishing the degree requirement, since it is apparent that the employer did not require that the degree requirement be satisfied only with a single four year degree.

The employer certainly did not intend to require a single four year degree as the only way in which the Bachelor's degree requirement could be satisfied in that the plaintiff lacked such a degree and the plaintiff was filling the position at the time the labor certification was filed. The employer certainly did not consider the plaintiff unqualified to fill his own position, since it otherwise would have never hired him for it, nor filed an application for labor certification upon his behalf.


In response the Defendants argue that CIS, and not the DOL determines whether the beneficiary qualifies for the position. Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Memorandum") at 16. However, that is not the issue here. The question is whether the labor certification

requires that a successful applicant for the position offered the plaintiff have a single four year degree. This is an issue of what the requirements for the position  are, not what the qualifications of the plaintiff are, and can be answered only by looking to the intent of the Department of Labor and the employer. As the D.C. Circuit Court of Appeals stated in the very case relied upon by defendants for their argument:

> "We recognize that the statutory division of authority between DOL's labor certification determination and INS' preference classification decision can lead to some discontinuity insofar as DOL-imposed job requirements are subject to interpretation by INS in its review of the alien's qualifications. Accordingly, INS will need the sensitivity to coordinate DOL and INS interpretations and to follow the Act's directive to consult with DOL when correctable discrepancies between the alien's qualifications and the labor certification job requirements appear. INS must also recognize that DOL bears the authority for setting the *content* of the labor certification and that it cannot impose job qualifications beyond those contemplated therein." *Madany v. Smith,* 696 F.2d 1008, 1015 (D.C. Cir. 1983).

Here the Defendants showed no sensitivity to coordinate DOL and CIS interpretations and to follow the Act's directive to consult with DOL when correctable discrepancies between the alien's qualifications and the labor certification job requirements appear. Nor did the CIS recognize that DOL bears the authority for setting

the *content* of the labor certification and that it cannot impose job

qualifications beyond those contemplated therein. Rather, it

completely ignored the role of the DOL (and the employer) in

establishing the content of the labor certification and instead

imposed the job qualification of a single four year degree which was

certainly not contemplated by either the DOL or the employer in

setting the requirements for this position.

Therefore this Court should hold that the CIS's decision in this

petition was not in accordance with the law and vacate it.


V.  DEFENDANT USCIS'S DECISION IS ARBITRARY,
    CAPRICIOUS AND AN ABUSE OF DISCRETION IN THAT IT IS
    NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The USCIS's decision denying this petition was arbitrary, capricious,

an abuse of discretion and not in accordance with the law in that

the record contained conclusive evidence that the plaintiff did in

fact meet the minimum requirements for the proffered position at

the time Form ETA-750 was accepted by the Department of Labor,

and therefore the USCIS's conclusion to the contrary is not

supported by substantial evidence.

As noted above, the record contains evidence that plaintiff Maramjaya held a Diploma in Electronics and Communication Engineering from the State Board of Technical Education and that he had completed the Sections A & B Examinations of the Institution of Engineers (India) in 1995 and was so awarded Associate Membership in the Institution of Engineers (India).

Further submitted in support of this petition were foreign academic credentials evaluations from Foundation for International Services, Inc. and Multinational Educational and Information Services, Inc. concluding that plaintiff Maramjaya's completion of the Sections A & B Examinations of the Institution of Engineers (India) is equivalent to the award of a Bachelor of Engineering degree in Electronics Engineering from an accredited university in the United States.

Further submitted in support of this petition were letters from the following: Government of India Ministry of Education and Social Welfare stating that the Government of India recognizes that the passing of Sections A&B examinations of the Institution of Engineers (India) is at par with a Bachelor's Degree in the appropriate field of Engineering from a recognized Indian University;

The Assistant Registrar of Osmania University certifying that passing Sections A&B of this examination is equivalent to a B.E. of Osmania University; The Institution of Engineers (India) certifying that passing Sections A&B Examinations are equivalent to four-year Bachelor of Engineering or Bachelor of Technology degrees from Indian Universities; and a statement from said Institution's website listing the Indian Institutes and Universities that recognize Associate Membership in the Institution of Engineers (India) as equivalent to a Bachelor's degree in Engineering.

Any of these pieces of evidence taken individually are sufficient to establish that the beneficiary hold the equivalent of a Bachelor's degree as required by the labor certification, and the defendants can identify nothing in the record to the contrary. Rather, they simply repeat that the "plain language" of the application required a single four year degree. However, the plain language of the application required no such thing. The plain language of the application required that the beneficiary hold the equivalent of a Bachelor's degree, and he did. Identical language has been held to allow the beneficiary to establish that he met the requirements of the application for labor certification through a combination of

education, training and experience, *Grace Korean United Methodist Church v. Chertoff*, 437 F. Supp. 2d 1174 (D. Ore. 2005); or through foreign education which, although not contained in a single four year degree, is certified by a foreign educational credential evaluation agency to be the equivalent of bachelor's degree. *Snapnames.Com, Inc. v. Chertoff*, 2006 U.S. Dist. LEXIS 87199 **(**D. Ore. 2006).

Here the petitioner submitted two (2) evaluations from educational credential evaluation agencies determining that the beneficiary's foreign education was the equivalent of a four year degree, as well as substantial evidence of the same from the Indian government and other prominent Indian institutions. There is no evidence in the record to the contrary and therefore no evidence to substantiate the defendants' conclusion that the beneficiary did not possess the equivalent of a bachelor's degree.

The defendants cite no evidence in the record that the beneficiary lacked the equivalent of a bachelor's degree but instead merely repeat, irrelevantly, that he did not possess a single four year degree which was the equivalent of such a degree, despite the fact

that nothing in the application for labor certification or the precedents of the Department of Labor (or the CIS or its predecessor INS themselves) limit the evidence which may be submitted of the beneficiary's qualifications to such credentials. They nevertheless seek to excuse their unsubstantiated decision with a number of meritless policy arguments. They argue that "By requesting a labor certification for a position that requires a bachelor's degree, the employer substantially limited the pool of potential U.S. workers who might qualify for the job. To allow education, experience and training to substitute for the bachelor's degree requirement, and permit the employer to hire an alien who does not meet its stated requirements in the ETA 750, would undermine the purpose behind the DOL certification. See 8 U.S.C. § 204.5(l)(3)(iii)(B)." Defendant's Memorandum at 12.

However, far from limiting the pool of potential U.S. workers, the employer's requirements expanded it by allowing any U.S. worker possessing the equivalent of a bachelor's degree to qualify for the

position.[4] Further, as noted above, the beneficiary full met the employer requirements.

The defendants also raise a spurious "equal protection" argument, claiming that the employer's requirements "create an impermissible double standard for the hiring of workers with U.S. credentials versus those with foreign credentials." Defendants' Memorandum at 19.  Not only is this classically an issue for the DOL to decide in determining whether to issue certification, and not for the CIS to raise in deciding whether the beneficiary meets the requirements of the certification, but it is based upon the assumption that the employer would only consider foreign credentials to be the equivalent of a U.S. Bachelor's degree. This is simply untrue  – a U.S. worker could establish that he possessed U.S. credentials which are the equivalent of a Bachelor's degree just as readily as the beneficiary established that he had foreign equivalent credentials.

---

[4] In fact, the DOL regulations in effect at the time this application was approved required that the Certifying Officer "consider a U.S. worker able and qualified for the job opportunity if the worker,
by education, training, experience, or a combination thereof, is able to perform in the normally accepted manner the duties involved in the occupation as customarily performed by other U.S. workers similarly employed, …" 20 C.F.R. § 656.24(b)(2)(ii)(2004). Thus the Certifying Officer was required to consider any U.S. worker who held the equivalent of a Bachelor's degree in education, training, experience, or a combination thereof qualified for the position even if the application didn't expressly provide for this equivalency.

Finally, the defendants argue that somehow the beneficiary must be barred from establishing that he has the equivalent of the required degree in any way other than through showing that he has a single four year degree because the H-1B regulations permit a beneficiary to establish that he has the equivalent of a required degree in education and experience whereas the regulations pertaining to immigrant visa classifications do not have such a requirement. Defendant's Memorandum at 16. However, the comments to the regulations implementing the immigrant visa provisions of the Immigration Act of 1990 do in fact expressly state that one may qualify as a skilled worker based upon education and experience which are the equivalent of a degree. ""[p]ersons formerly qualifying for third preference by virtue of education and experience equating to a bachelor's degree will qualify for the third employment category as skilled workers with more than two years of training and experience." 56 Fed.Reg. 60897, 60899-60900 (November 29, 1991)."

In any event, the H-1B regulations establish the qualifications needed to satisfy a requirement of the statute. There is no reason why the drafters of the regulations pertaining to immigrant visas

would have developed express rules setting forth how the

beneficiary of an application for labor certification could satisfy the

requirements of that application given that those requirements are

set by the employer, and encompass a broad range of subjects

including not only education, but also experience, training, and

even language ability. It should be noted that, for example, that the

immigrant visa regulations do not expressly state that one may

establish that one has the equivalent of a U.S. bachelor's degree

through a single four year foreign degree, despite the strenuous

arguments of the defendants that this is the sole way of satisfying

such an equivalency.

An administrative decision entered without substantial evidence in

support of its conclusions is arbitrary and capricious. *National

Treasury Employees Union v. Horner*, 272 U.S. App. D.C. 81 (D.C.

Cir. 1988) at 27. Accordingly, the baseless decision of the

defendants' denying the I-140 filed upon the plaintiff's behalf herein

was arbitrary and capricious and should be vacated.

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court deny the Defendants' motion to dismiss this action and deny its motion for summary judgment.

//

Respectfully submitted this 15th day of August, 2007.

s/MICHAEL E. PISTON
Piston & Carpenter P.C.
4000 Livernois, Suite 110
Troy, MI 48098
248-524-1936
248-680-0627 facsimile
michael@piston.net

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:


JEFFREY A. TAYLOR, United States Attorney

RUDOLPH CONTRERAS, Assistant United States Attorney

MARIAN L. BORUM, Assistant United States Attorney


I further certify that I have mailed by United States Postal Service the foregoing document to the following non CM/ECF participant, addressed as follows:

None

Dated this 15th day of August, 2007.

s/MICHAEL E. PISTON
Piston & Carpenter P.C.
4000 Livernois, Suite 110
Troy, MI 48098
248-524-1936
248-680-0627 facsimile
michael@piston.net

# EXHIBIT LIST

Exhibit A    *Syscorp International*, 89-INA-212 (BALCA 1991)

Exhibit B    *SnapNames.Com, Inc. v. Chertoff*, 2006 U.S. Dist. LEXIS 87199 (D. Or. 2006) (*17-26)

Exhibit C    *In re [name not provided],* A 98 128 936  (AAO July 14, 2007)

Exhibit D    "Memorandum For Regional Directors" from Michael A. Pearson, Executive Associate Commissioner, Office of Field Operations, Immigration and Naturalization Service re: Transferring Section 245 Adjustment Applications to New or Subsequent Family or Employment Based Immigrant Petitions (May 9, 2000)



**U.S. Department of Labor**

**Office of Administrative Law Judges**



**www.oalj.dol.gov**          ___Search: [                    ] [Go]     Advanced Searcl

Find It! on DOL | OALJ Home | OALJ Law Library | About Us | Printer F

**April 5, 2005**          DOL Home > OALJ Home > USDOL/OALJ Reporter

# USDOL/OALJ Reporter

**SYSCORP INTERNATIONAL, 1989-INA-212 (Apr. 01, 1991)**

[Source: Immigration Law Systems, Inc., Columbus, OH *]

---

**U.S. Department of Labor**          Board of Alien Labor Certification Appeals
Washington, DC

DATE:     April 1, 1991
CASE NO:  89-INA-212

IN THE MATTER OF SYSCORP INTERNATIONAL, Employer
          RONGSHENG ZHU, Alien

Paul Parsons & Joshua Turin, Esquires
Dallas, Texas

BEFORE:  Litt, Glennon and Williams, ALJ
          Joel R. WILLIAMS, Administrative Law Judge

REGION:6

STATEMENT OF THE CASE

On April 26, 1988, the Employer, Syscorp International, filed an application for labor certification on behalf of Rongsheng Zhu (AF 61. The position for which certification was sought is Software Engineer (AF 61). The Employer's job duties included the development of a graphic-based specification tool and manipulation of both bit mapped and vector based graphic display systems (AF 61). The job requirements were either an M.S. or equivalent with no job experience or a B.S. or equivalent with two years' experience in mathematics or computer science (AF 61).

The record includes a statement from the President of Yunnan Electronic Equipment Factory to the effect that the Alien had been employed at this factory from 1975 to 1985 during which time he contributed to the design and development of software systems such as a semi-conductor memory operating system and China's first computer-based chromatography. He was also responsible for giving lectures on software

systems for training engineers and technicians. He had published many "tehnic" [sic] reports and papers and [sic] one of the products, for which he was responsible for the software system, had won a first prize in a product competition.

The Notice of Finding (NOF) was issued on April 26, 1988 (AF 34-35). The Certifying Office [sic] (CO) determined that the Employer had failed to comply with 20 CFR section 656.21(b)(6) since the documents provided by the Employer did not establish that its job requirements represented the Employer's actual minimum requirements for the position (AF 34).

The CO based her findings on three evaluations of the Alien's qualifications. Two of these evaluations were performed by agencies which specialize in evaluating foreign education and training, and one by a Ph.D. familiar with foreign credentialing (AF 26-32). The first evaluation was performed by Foreign Credentials Service of America and was prepared by William J. Paver, Ph.D., who is responsible for the international admission programs at the University of Texas at Austin. Dr. Paver found that the Alien did not have the equivalent of a Bachelor's degree in mathematics based upon his attendance at Fudan University in the People's Republic of China (AF 23, 26-28). With respect to education in China, Dr. Paver found that "[i]nternational credentials analysts and admissions officers do not recognize degrees awarded or credits "earned" during the 1966-76 Cultural Revolution period for the simple reason that most universities shut down completely, and political factors or recommendations from work units led in many cases to admission or the awarding of degrees or diplomas." (AF 26). Mr. Zhu's transcript shows that he attended Fudan University for two years out of a five-year program. Dr. Paver found, in effect, that the Bachelor's degree bestowed upon Mr. Zhu in 1969 was based on a combination of up to 60 hours of documented academic performance and his work experience. He noted that American admissions officers do not award academic credit for life experience, and that the Alien would face two more years of course work toward a Bachelor of Science degree.

The second evaluation was submitted by Education International for consideration by the Immigration and Naturalization Service and was prepared by Joel B. Slocum, the director of the program. Mr. Slocum found, upon review of Mr. Zhu's credentials, that he had completed at least two years of college in the area of mathematics (AF 28).

The third evaluation, prepared by Dr. Bruce Gilchrist, Ph.D., Director of the Center for Computing Activities, Adjunct Professor of Computer Science and of Business, Columbia University in the City of New York. He found the Alien's education and experience qualified him for the position. He based this on the Alien's education and degree from Fudan University, a four-month training course, five years' work experience in computer science and software engineering, and written publications by the Alien (AF 29-32).

Based upon review of the Alien's record and the three evaluations, the CO found that the Alien did not meet the Employer's own requirements and, therefore, the job requirements did not represent the Employer's actual minimum requirements. The CO denied certification concluding that "[c]learly, the employer is requiring terms and conditions of employment

which are less favorable to U.S. workers than those offered to the alien." (AF 35).

The Employer submitted its rebuttal to the NOF on January 2, 1988 (AF 9-32).  In its rebuttal the Employer argued that its requirements were the actual minimum requirements (AF 10-11).  The Employer submitted its signed statement, dated June 6, 1988, asserting that no employee had been hired with lesser qualifications (AF 16).  A sworn affidavit dated January 3, 1989, was also submitted asserting that the requirements are essential and the minimum for the position offered (AF 11, 17-22).  The Employer also argued that the Department of Labor (DOL) had exceeded its role in determining whether the Alien's qualifications meet the requirements of the position (AF 12).  This determination, the Employer argued, is to be made by the Immigration and Naturalization Service (INS) which "allows the alien to demonstrate, through a combination of training, experience and education the equivalency of a degree" (AF 12).  The Employer notes in this regard that the INS has granted the Alien an H-1 visa, which is tantamount to a finding that it considers him to have the equivalent of a Bachelor's degree.  In addition, the Employer argued that it had presented prima facie evidence that the Alien had met the Employer's minimum requirements through Dr. Gilchrist's findings (AF 13-14).

The Final Determination (FD) denying certification was issued on February 28, 1989 (AF 6-7).  In the FD the CO stated that the Employer had failed to document that "it has offered terms and condition[s] of employment to U.S. workers which are no less favorable than those offered to the alien at the time he was hired." (AF 7).

The Employer requested review on March 28, 1989 (AF 2-3) and subsequently filed a brief on June 22, 1989.  The CO did not file a brief.

DISCUSSION

The Employer contends that the INS could not, consistent with established binding precedent, have approved the H-1 petition for the Alien without first concluding that he had at least a Bachelor's degree or its equivalent.  It notes in this regard that the H-1 is generally restricted to persons of "distinguished merit and ability" and "members of the professions," and that an individual can be considered a "member of the professions" only if he has at least a Bachelor's degree or its equivalent.  Citing Mather of Shin, 11 I & N Dec. 686 (DD 1966).

It appears that the INS does recognize professional status for the purpose of H-1 visas on the basis of a combination of college education short of a degree and experience in the profession.  Although, the extent of the college education which INS required in the past may not have been well settled, 1/ recent amendments to their regulations set forth clear guidelines for such determinations.  Pursuant to 8 CFR section 214.2(h)(4)(iii)(c) equivalence to a baccalaureate or higher degree in a professional may be established by substituting three years of professional level work experience for each year of college-level training the alien lacks.  It must be established also that the alien has professional standing and recognition which may be done by his or her having published material in professional publications. 2/  The Alien in

the instant case meets these criteria.

We do not agree with the Employer that we are bound by the INS equivalency determination.  Nevertheless, in the absence of any contrary regulatory guidlines [sic] promulgated by the Secretary of Labor, we find the INS rules particularly persuasive.  Furthermore, the Employer here has accepted the Alien as meeting its requirements for a bachelor degree "or equivalent."  It is not shown that it has rejected a U.S. worker as not meeting its equivalency requirements.  Consequently, we conclude that the Alien met the Employer's educational requirements when hired.

ORDER

The Certifying Officer's denial of alien labor certification is REVERSED and labor certification is hereby GRANTED.

---------

1/   cf.  Matter of Portuguese "Do Atlantico Information Bureau, Inc. Interim Dec. 2982 (Commr. 1984) "virtually all normal coursework" v. Matter of Sea, Inc. Interim Dec. 3089 (Assoc. Commr. Nov. 16, 1988) equivalency of two years associate degree in engineering technology plus 20 years of work experience equivalent to a bachelor's degree.

2/ This method of establishing equivalency is and [sic] of the alternatives to an evaluation by a credentials evaluation service.

 **Back to Top**                    **www.oalj.dol.gov**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey | Privacy and Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                                                              **1-**
Office of Administrative Law Judges                                                      TTY:
800 K Street, NW, Suite 400N
Washington, DC 20210

http://www.oalj.dol.gov/public/ina/DECSN/89INA212.htm                    4/5/2005

24 of 31 DOCUMENTS

**SNAPNAMES.COM, INC. et al., Plaintiffs, v. MICHAEL CHERTOFF, et al., Defendants.**

**No. CV 06-65-MO**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON**

**2006 U.S. Dist. LEXIS 87199**

**November 30, 2006, Decided**

**COUNSEL:** [*1] For SnapNames.Com, Inc., an Oregon corporation, Sanjay Agarwal, an individual, Nalini Agarwal, an individual, Plaintiffs: Baolin Chen, LEAD ATTORNEY, Chen & Mu, Portland, OR.

For Michael Chertoff, Secretary of the Department of Homeland Security of the States, Emilio T. Gonzalez, Director, United States Citzenship and Immigration Services, Evelyn Upchurch, Nebraska Service Center Acting Director, United States Citizenship and Immigration Services, Defendants: Kenneth C. Bauman, LEAD ATTORNEY, United States Attorney's Office, Portland, OR; Victor Matthew Lawrence, LEAD ATTORNEY, US Department of Justice Civil Division, Office of Immigration Litigation, Washington, DC.

**JUDGES:** Michael W. Mosman, United States District Court Judge.

**OPINION BY:** Michael W. Mosman

**OPINION:**

OPINION & ORDER

**MOSMAN, J.,**

In this immigration case, the Administrative Appeals Office ("AAO") denied SnapNames.com, Inc.'s ("SnapNames") employment-based visa petitions filed on behalf of Sanjay Agarwal seeking to classify him as a "skilled worker" and a "professional" under 8 U.S.C. § 1153(b)(3)(A)(i), (ii), and a "member of the professions holding advanced degrees" under 8 U.S.C. § 1153(b)(2)(A) [*2] . The AAO concluded (1) SnapNames failed to prove it could pay Mr. Agarwal's proffered wage, and (2) Mr. Agarwal does not meet the educational requirements for the position he seeks with SnapNames. SnapNames filed suit seeking judicial review of the AAO's denials. Thereafter, defendants filed a motion to dismiss (# 13) and SnapNames filed a cross motion for summary judgment (# 18). On November 3, 2006, the court held oral argument. The court found in favor of SnapNames on the ability-to-pay issue, GRANTING its motion for summary judgment and DENYING defendants' motion to dismiss as to this issue. On the educational requirement issue, the court found in favor of SnapNames regarding the "skilled worker" classification, but in favor of defendants as to the "professional" and "member of the professions holding advanced degrees" classifications. After the court's oral ruling, the parties requested further clarification of this latter holding. This opinion addresses that request. The ability-to-pay issue, however, was sufficiently addressed at the hearing and is not further discussed.

BACKGROUND

Mr. Agarwal is originally from India. In the 1980s he attended the University of Calcutta [*3] and received a three year Bachelor of Commerce (Honours) degree. AR n1 at 30. Thereafter, he attended the Institute of Chartered Accountants of India and completed all the required course work and examinations to become a member. AR 32-35.

n1 "AR" refers to the Administrative Record.

In February 2002, Mr. Agarwal began working for

SnapNames. In August 2002, SnapNames began seeking an employment visa on Mr. Agarwal's behalf. First, the company filed an Application for Alien Employment Certification ("labor certification") with the Oregon Employment Department. AR at 8. In its application, SnapNames named Mr. Agarwal and described the position being offered to him. The company stated the educational requirements for the job were four years high school, four years college, and a "B.S. or foreign equivalent" in Computer Science or Accounting." *Id.*

In November 2002, the San Francisco Regional Office of the Department of Labor ("DOL") approved SnapNames's application and issued the following certification: [*4]

> Pursuant to the provisions of Section 212 of the Immigration and Nationality Act as amended I hereby certify that there are not sufficient U.S. workers available and the employment of the above will not adversely affect the wages and working conditions of workers in the U.S. similarly employed.

AR at 8. Thereafter, SnapNames filed two Immigrant Petitions for Alien Worker (I-140) with the Nebraska Service Center ("NSC") on Mr. Agarwal's behalf. In the first petition, SnapNames sought to have Mr. Agarwal classified as a "skilled worker" or a "professional" under 8 U.S.C. § 1153(b)(3)(A)(i), (ii). In the second, the company sought to have him classified as a "member[] of the professions holding advanced degrees" under 8 U.S.C. § 1153(b)(2). In support of its petitions, SnapNames submitted several professional evaluations concluding Mr. Agarwal's education is equivalent to an American baccalaureate degree.

The NSC denied both of SnapNames's petitions, finding Mr. Agarwal does not have the requisite educational background. Considering his commerce degree from the University of Calcutta, the agency stated: "According to the [*5] education evaluations submitted with this petition, this is a three-year course of study, and is equivalent to three-years of university level credit from an accredited college or university in the United States. The course of study and resulting degree are therefore not equivalent to a United States baccalaureate degree." AR at 140, 208. The agency also concluded that the equivalent to a U.S. bachelor's must be "a *single-source,*

*foreign degree,*" AR at 141 (emphasis added), and that combined education and experience is not sufficient. AR at 208. Mr. Agarwal's failure to meet the educational requirement specified by the labor certification and applicable statute and regulations was the NSC's sole basis for denying SnapNames's petitions.

SnapNames appealed the NSC's decision to the AAO. Explaining that it lacked the authority to ignore or change the job requirements specified in the DOL's certification, the AAO also concluded Mr. Agarwal was not qualified for SnapNames's certified position because he does not have the requisite degree or its foreign equivalent. AR at 159, 244. Again, the AAO concluded Mr. Agarwal's three-year commerce degree is not equivalent to a U.S. bachelor's [*6] because it is only a three-year, subject-specific degree that does not include the general education requirements of an American degree. AR at 167-68. The AAO also agreed with the NSC that Mr. Agarwal must have a single equivalent degree and therefore consideration of Mr. Agarwal's additional education or work experience is inappropriate. However, the AAO further concluded that even considering Mr. Agarwal's additional education and membership in the Institute of Chartered Accountants of India, he does not meet the degree requirement because this was also a subject-specific course of study. AR at 168.

**DISCUSSION**

**I.) Legal Standards**

The court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether this standard is met, the court considers only the pleadings and must "presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). [*7] Where the court considers matters outside the pleadings, the motion to dismiss is treated as a motion for summary judgment under Fed. R. Civ. P. 56. *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). As far as the educational requirements issue addressed in this opinion, the court treats the parties' motions as cross motions for summary judgment.

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "pointing out" the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden is met by showing an absence of evidence to support the non-movant's case. *Id.* In order to defeat summary judgment, the non-moving party must then set forth "'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) [*8] (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (citation omitted).

The agency's decision finding Mr. Agarwal is not qualified can only be overturned if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004). Significant deference is afforded to the agency's factual findings, particularly in relation to issues implicating the agency's expertise. *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002). Further, the agency is afforded *Chevron* deference in interpreting the statute it is charged with enforcing. *Az. State Bd. For Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1006-07 (9th Cir. 2006). Thus, the court must "look first to the statutory text to see whether Congress has spoken directly to the question at hand." *Id.* at 1006 (internal quotation marks and citation [*9] omitted). If Congress has spoken clearly, "that is the end of the matter," and the plain language controls. *Id.* But, where the language is ambiguous, the court must "defer to the agency's interpretation if it is based on a permissible construction of the statute." *Id.* at 1006-07 (internal quotation marks and citation omitted). "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Id.* at 1007 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (footnotes omitted)). Further, the agency is afforded even greater deference in interpreting its regulations. Thus, its decision "controls unless it is

plainly erroneous or inconsistent with the regulation[s]." *Nev. Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 717 (9th Cir. 1993) (internal quotation marks and citations omitted).

At all times, the visa petitioner bears the burden of proving the alien on behalf of whom the petition [*10] is made is qualified for the immigration benefits sought. *In re Martinez*, 1997 WL 602544 (BIA 1997) (citing *Matter of Patel*, 19 I&N Dec. 774 (BIA 1988); *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965)).

## II.) Educational Requirement

As indicated above, SnapNames sought three different visa classifications on behalf of Mr. Agarwal: (1) "skilled worker" under 8 U.S.C. § 1153(b)(3)(A)(i), (2) "professional" under 8 U.S.C. § 1153(b)(3)(A)(ii), and (3) "member[] of the professions holding advanced degrees" under 8 U.S.C. § 1153(b)(2)(A).

### A.) "Skilled Worker"

To qualify as a "skilled worker," the alien must be "capable . . . of performing skilled labor (requiring at least 2 years training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States." 8 U.S.C. § 1153(b)(3)(A)(i). The regulations further specify a skilled-worker petition "must be accompanied by evidence that the alien meets the educational, training or experience, and any other requirements *of the individual* [*11] *labor certification.* 8 C.F.R. § 204.5(l)(3)(ii)(B) (emphasis added).

Here, SnapNames's labor certification specifies an educational requirement of four years of college and a "B.S. or foreign equivalent." AR at 8. The AAO found Mr. Agarwal does not meet this requirement n2 based on its interpretation of "B.S. or foreign equivalent." Specifically, the AAO made two interpretive decisions. First, that the "foreign equivalent" must be solely in terms of *educational background* and not a combination of education and work experience. And second, that the "foreign equivalent" must be a *single degree*, thereby precluding consideration of combined educational experiences. Before addressing the substance of the AAO's decision, however, the administrative context in which this issue arises must be addressed.

n2 The parties agree Mr. Agarwal otherwise meets the labor certification requirements.

### 1.) **Administrative Context**

Certain employment-based visa petitions, including those for [*12] "skilled workers," require a labor certification. 8 C.F.R. § 204.5(l)(3)(i). However, this certification is not a Citizenship and Immigration Services ("CIS") function. Rather, it is a function performed by the Department of Labor ("DOL"). Thus, as happened here, the petitioner submits an application for certification to the DOL describing the job at issue and identifying the alien beneficiary. *See* AR at 8. The petitioner also defines the "MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties." *Id.* In issuing the certification, the DOL considers the job, as defined by the petitioner, and certifies that (1) "there are not sufficient workers who are able, willing, qualified . . . and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled . . . labor," and (2) "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i).

Once certified, the petitioner applies for a visa with CIS, submitting DOL's [*13] certification in support as required by the regulations. 8 C.F.R. § 204.5(l)(3)(i). It is then CIS' responsibility to determine whether the alien is qualified for a visa under the applicable statute and regulations and under the terms of the certification. 8 U.S.C. § 1154(b); n3 8 C.F.R. § 204.5(l)(3)(ii)(B).

n3 Section 1154(b) states:

After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) [members of the professions holding advanced degrees] or 1153(b)(3) [skilled workers] of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is . . . eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

[*14]

Because there are two separate agencies involved in this process, there has been some confusion about the proper division of authority. Specifically, some have argued that by issuing a labor certification, the DOL establishes the named alien meets the requirements specified therein, depriving CIS of the authority to find otherwise. *See K.R.K. Irvine, Inc. v. Landon*, 699 F.2d 1006 (9th Cir. 1983); *Madany v. Smith*, 696 F.2d 1008 (D.C. Cir. 1983). This argument has been firmly rejected. In *Landon*, the Ninth Circuit held:

[T]he statutory provisions . . . demonstrate[] that there is a careful division of functions between the Secretary of Labor and the INS. On the face of these provisions, it appears that the DOL is responsible only for determining the availability of suitable American workers for a job and the impact of alien employment upon the domestic labor market. It does not appear that the DOL's role extends to determining if the alien is qualified for the job for which he seeks. . . . That determination appears to be delegated to the INS under . . . 8 U.S.C. § 1154(b), as one of the determinations incident [*15] to the INS's decision whether the alien is entitled to [a visa].

699 F.2d at 1008 (citing 20 C.F.R. § 656.2(e)). Similarly, the D.C. Circuit explained:

> Although the [INA] allocates a limited role to DOL, it vests primary responsibility for implementation with INS.
>
> There is no doubt that the authority to make preference classification decisions rests with INS. The language of [8 U.S.C. § 1154] cannot be read otherwise. In turn, DOL has the authority to make the two determinations listed in section [1182(a)(14)]. n4 The necessary result of these two grants of authority is that section [1182(a)(14)] determinations are not subject to review by INS absent fraud or willful misrepresentation, but all matters relating to preference classification eligibility not expressly delegated to DOL remain within INS' authority. The review here in question concerns the alien's skills or qualifications and is not one of the inquiries expressly allocated to DOL by section [1182(a)(5)]. This does not mean that DOL cannot, or does not, undertake analysis of an alien's qualifications as it performs its statutory [*16] functions. Indeed, DOL may gauge an alien's skill level in evaluating the effect of the alien's employment on United States workers. The fact that DOL may find such an analysis useful, however, does not foreclose INS from considering alien qualifications in the preference classification decision.

*Madany*, 696 F.2d at 1012. Therefore, to the extent SnapNames argues the DOL certification precludes the AAO from considering whether Mr. Agarwal meets the educational requirements specified in the labor certification, it is in error.

> n4 The case references section 212(a)(14) of the INA, which ordinarily would translate into 8 U.S.C. § 1182(a)(14). However, the structure of the statute has been amended since this case

was published and the language being referred to now exists at 8 U.S.C. § 1154(a)(5).

That easier issue aside, the real question here concerns CIS' role in *interpreting* the labor certification. In this case, the AAO found Mr. Agarwal [*17] not qualified based on its interpretation of "B.S. or foreign equivalent," as stated in the labor certification. The agency argues it is entitled to interpret this phrase consistent with its understanding of similar language in its regulations. *See* 8 C.F.R. § 204.5(l)(2) (defining "professional" as one who "holds at least a United States baccalaureate degree or a foreign equivalent degree"). On the other hand, SnapNames argues that because it defined the educational requirements in the labor certification, the language should be construed in light of its understanding and not the agency's, which is based on regulatory language not applicable to "skilled workers" petitions.

SnapNames has the better argument. CIS does not have the authority to define the particular employment position or the necessary qualifications for such. Rather, CIS must "examine the certified job offer exactly as it is completed by the prospective employer." *Rosedale & Linden Park Co. v. Smith*, 595 F. Supp. 829, 833 (D.C.D.C. 1984). Speaking directly to this issue, the D.C. Circuit stated:

> We recognize that the statutory division of authority between DOL's labor [*18] certification determination and INS' preference classification decision can lead to some discontinuity insofar as DOL-imposed job requirements are subject to interpretation by INS in its review of the alien's qualifications. Accordingly, INS will need the sensitivity to coordinate DOL and INS interpretations and to follow the Act's directive to consult with DOL when correctable discrepancies between the alien's qualifications and the labor certification job requirements appear. INS must also recognize that DOL bears the authority for setting the content of the labor certification and that it cannot impose job qualifications beyond those contemplated therein.

*Madany*, 696 F.2d at 1015.

Thus, in interpreting the labor certification, the agency must start with the plain meaning of the petitioner's language, if such exists. Where the language is ambiguous, however, a question arises as to how much deference to afford the agency's interpretation. Relating back to an agency's statutory interpretation, defendants argue the court must defer to the agency so long as its interpretation is reasonable. *Az. State Bd. For Charter Schs.*, 464 F.3d at 1006. [*19] However, such deference is afforded in recognition that the agency has specific expertise over matters addressed in the statute it enforces. *Natural Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1297 (9th Cir. 1992) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). The labor certification is not analogous to the agency's statute in this manner. The labor certification is an occupational assessment performed by DOL based on the requirements specified by the prospective employer and petitioner. CIS does not have any particular expertise in relation to an employer's needs or intent in defining employment positions. Likewise, it has no particular expertise as to the certification performed by DOL. Thus, there is no justification for affording deference to the agency's interpretation in this context. With that in mind, I now consider the AAO's interpretation of SnapNames's labor certification.

**2.) The Agency's Interpretive Decision**-What does the labor certification's "B.S or foreign equivalent" requirement mean?

As stated, the AAO first concluded "B.S. or foreign equivalent" relates solely to educational [*20] background, precluding consideration of combined education and work experience. Looking to plain meaning of SnapNames's words, I agree with the agency's conclusion. There is no indication in the requirements that the employee have "four years of college" and a "B.S. or foreign equivalent" that something other than equivalent educational background will suffice. SnapNames argues this conclusion "ignores the likely interpretation that the labor certification contemplated someone who had the foreign equivalent of a U.S. bachelor's degree as decided by qualified professional service evaluators." Pl.'s Resp. Mot. to Dismiss at 9. While this may be a reasonable standard, it is not specified in the labor certification, and whereas SnapNames defined the employment requirements in the

labor certification, if this was its intent it could have easily so stated. Instead, however, in the box titled "College Degree Required," SnapNames specified "B.S. or foreign equivalent," indicating a specific level of *educational background* was required. n5

n5 It should be noted that on appeal to the AAO, SnapNames submitted additional statements from its expert education evaluators stating their conclusions that Mr. Agarwa has the equivalent to an American baccalaureate was based solely on his educational background and did not take into account his work experience. AR at 236-39.

[*21]

Judge Papak recently came to a different conclusion construing similar but not identical language. *Grace Korean United Methodist Church v. Chertoff ("Grace Korean")*, 437 F. Supp. 2d 1174 (D. Or. 2005). He held:

Defendants contend Plaintiffs established a specific degree requirement by use of the phrase "B.A. or equivalent." This argument is also untenable as it offers an explanation for its decision that runs counter to the evidence before the agency and is based on an implausible construction of the language in the labor certification.

It is the employer, working under the supervision and direction of OED and DOL, that establishes the requirements for employment. CIS looks to education and experience requirements in the labor certification to determine whether the applicant falls within the skilled worker or professional classification. That determination should be "based on the requirements of training and/or experience placed on the job by the prospective employer, as certified by the Department of Labor." 8 C.F.R. § 204.5(1)(4). It is the responsibility of the employer, not CIS, to establish the criteria for the open position. [*22] It is undisputed that the [plaintiff

employer] intended the language "B.A. or equivalent" to include degree equivalency based on education and experience, because it drafted the labor certification with [the employee] in mind. It is also not in dispute that [the employee] possessed the equivalent of a bachelor's degree . . . based on her unique combination of education and relevant experience.

CIS does not have the authority or expertise to impose its strained definition of "B.A or equivalent" on that term as set forth in the labor certification. *Tovar v. U.S. Postal Service*, 3 F.3d 1271, 1276 (9th Cir.1993) (stating that U.S. postal Service has no expertise or special competence in immigration issues); *Omar v. INS*, 298 F.3d 710, 714 (8th Cir.2002), overruled in part on other grounds, *Leocal v. Ashcroft*, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (finding INS interpretation of criminal statute not entitled to deference). If any agency has the power to define the job qualifications set forth in a labor certification, it is the DOL, the agency responsible for reviewing and adjudicating the labor certification. Here, [*23] the only evidence before this court is that DOL and OED worked with the [plaintiff employer] in drafting the labor certification and advertising the position, knowing full well [the employee's] credentials.

*Id.* at 1179.

Here, SnapNames also filled out the labor certification with Mr. Agarwal in mind. However, CIS has an independent role in determining whether the alien meets the labor certification requirements, and where the plain language of those requirements does not support the petitioner's asserted intent, the agency does not err in applying the requirements as written. In fact, the agency is obligated to "examine the certified job offer *exactly as it is completed* by the prospective employer." *Rosedale & Linden Park Co.*, 595 F. Supp. at 833 (emphasis added). To require the agency to go beyond the certification's plain language, where such exists, would not only be inconsistent with this obligation, it would undermine the

agency's role in independently determining whether the alien meets the specified requirements.

In addition, interpreting the labor certification on the basis of the named alien's background could undermine the DOL's certification. [*24] For example, DOL certified that employing the named alien will not "adversely affect" domestic workers. 8 U.S.C. § 1182(a)(5)(A)(i)(II). But, allowing a combination of education and work experience to count for alien workers while at the same time requiring a specific degree from domestic workers puts domestic workers at a disadvantage.

For these reasons, I find the agency's conclusion that work experience is not properly considered in determining whether the alien has a "B.S. or foreign equivalent" is not arbitrary and capricious as it is supported by the plain meaning of SnapNames's labor certification.

As for the agency's second conclusion that "B.S. or foreign equivalent" requires a *single degree* thereby precluding consideration of combined educational experiences, I find the labor certification's language ambiguous. On one hand, "equivalent" is defined as "equal in force, amount, or value." *Merriam-Webster's Collegiate Dictionary* 423 (11th ed. 2005). Certainly it is possible for multiple educational experiences, as well a single degree, to be equal in amount or value to a U.S. baccalaureate. Further, "equivalency" inherently means something different [*25] than "sameness." Otherwise, there is no need to specify "B.S. *or foreign equivalent*;" "B.S." alone would suffice. On the other hand, in addition to requiring four years of college, SnapNames specified a degree requirement. This suggests that not only is the company interested in a quantitatively equivalent education, but also an equivalent result.

In resolving this ambiguity, the AAO stated: "Neither the statute nor the conforming regulations allow for alternatives to the requirement of the specific degree required on the [labor certification application], whether the equivalency is based on work experience of a combination of lesser educational degrees and certifications, professional memberships or other training." AR at 168. The problem with this analysis, however, is that unlike the other employment visa categories yet to be discussed, there are no statutory or regulatory educational requirements for "skilled workers." Rather, educational requirements only arise in

this context when specified by the prospective employer in the labor certification. Thus, the agency's interpretation of SnapNames's educational requirement should be informed by SnapNames's intent, to the extent [*26] possible, and not on the agency's understanding of similar but inapplicable regulatory language.

Here, in support of its petition, SnapNames submitted a letter from its CFO explaining: "When we use the term 'foreign equivalent' in the DOL application, we mean we would accept any foreign academic credentials submitted as evidence of a B.S. equivalent by a credentialing agency that is a member o the National Association of Credential Evaluation Services, Inc." AR at 151. This is strong, undisputed evidence of SnapNames's intent, which the agency apparently did not even consider.

Further, 8 U.S.C. § 1154(b) requires the agency to consult with DOL before deciding whether to approve or deny "skilled worker" visa petitions. *See Madany*, 696 F.2d at 1012. There is no evidence this was done in this case. Rather, the AAO stated, "the issuance of a labor certification does not bind CIS to accept the employer's, or even the [DOL]'s definition of the amount and kind of experience that should be considered the equivalent of a college degree." AR at 165. The agency also cited *In re Hong Video Technology*, 2001 WL 1055170 (BALCA 2001), concluding [*27] that, in any event, its interpretation is consistent with the DOL's. However, in *Hong Video*, the named alien's education was only equivalent to an associate's degree, and the employer sought a visa on the basis of the alien's combined education and work experience. The DOL rejected this interpretation, explaining it would put foreign workers at an advantage over domestic workers. *Id.* at *3. Therefore, this case does not reveal the DOL's view of whether it is appropriate to consider combined *educational experiences* in meeting a "B.S. or foreign equivalent" requirement.

As such, I find the agency's conclusion that the labor certification requires a *single* equivalent degree is arbitrary and capricious. It is clear the agency simply relied on its prior interpretation of similar but inapplicable regulatory language and failed to appreciate the difference between interpreting the labor certification and statutory or regulatory provisions. *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) ("Agency action should be overturned only when the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider [*28] an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.") (internal quotation marks and citation omitted).

3.) **The Agency's Substantive Decision**-Does Mr. Agarwal meet the labor certification's educational requirements?

In spite of its single-degree interpretation, the agency further concluded that even considering Mr. Agarwal's combined educational background, he fails to meet the labor certification's degree requirement. Specifically, the AAO reasoned that Mr. Agarwal does not have the equivalent to an American baccalaureate because whereas American students are required to take general education courses to earn a degree, his degrees are subject-specific. AR at 168. However, several professional academic evaluators concluded Mr. Agarwal's combined education is equivalent to an American degree, AR at 166-67, 236-39, and there is no such evidence concluding Mr. Agarwal's education is not the "foreign equivalent" to a B.S. Further, under the agency's reasoning, a foreign education would only qualify [*29] as "equivalent" where it is based on Western educational theory. This would certainly be a significant policy statement were it intended. Defendants have not cited anything in support of this view, and I am hesitant to accept it. As discussed above, "equivalency" is not "sameness." Therefore, I also find the AAO's conclusion that Mr. Agarwal's combined educational background is not the "foreign equivalent" to an American baccalaureate degree is arbitrary and capricious and cannot be sustained. 5 U.S.C. § 706(2)(A).

B.) "Professional"

Next, SnapNames sought to have Mr. Agarwal classified as a "professional" under 8 U.S.C. § 1153(b)(3)(A)(ii). "Professionals" include "[q]ualified immigrants who hold baccalaureate degrees and who are members of the professions." *Id.* The regulations further specify that a professional must have "at least a United States baccalaureate degree or a foreign equivalent degree." 8 C.F.R. § 204.5(l)(2).

Again, the AAO employed its single-degree interpretation and found Mr. Agarwal does not qualify for

this visa because he does not have the equivalent of a U.S. baccalaureate. However, [*30] unlike in the "skilled worker" context, here the agency was interpreting the statute it is charged with enforcing, as well as its own regulations. As such, the agency's decision is afforded significant deference. *Az. State Bd. For Charter Schs.*, 464 F.3d at 1006-07; *Nev. Land Action Ass'n*, 8 F.3d at 717.

SnapNames argues the AAO's interpretation is unreasonable because Congress did not explicitly say *one* qualifying degree is required. That may be true, but this argument only furthers the agency's position. Because Congress did not explicitly addressed whether one degree or a combination of degrees is sufficient, the agency has the authority to interpret the statutory language and develop regulations to fill in the gaps. *Natural Res. Def. Council, Inc.*, 966 F.2d at 1297. The applicable regulation adopted by the agency states the alien must have "at least . . . *a* foreign equivalent degree," and that in proving this requirement, the alien must submit "an official college or university record showing the date the baccalaureate *degree* was awarded." 8 C.F.R. § 204.5(l)(2)& (3)(ii)(C) (emphasis added). [*31] Based on this language, it is within the agency's authority to conclude a single equivalent degree is required. Simply because it may also be reasonable to interpret this language as allowing a combination of degrees or educational programs to satisfy the requirement, does not mean the court can disturb the agency's decision. *Nev. Land Action Ass'n*, 8 F.3d at 717 (can only overturn agency's regulatory interpretation where it is "plainly erroneous or inconsistent with the regulation[s]").

SnapNames also suggests the agency's interpretation is arbitrary and capricious because the agency has not consistently applied the single-degree interpretation. It is true inconsistent interpretations from the agency can render its decision arbitrary and capricious. *Lin v. U.S. Dept. of Justice*, 459 F.3d 255, 262 (2d Cir. 2006) (citing *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 356 (2000)). However, the evidence SnapNames relies on in support of this argument are minutes from various immigration law conferences where CIS representatives, responding to specific questions, indicated a final policy decision has not yet been made regarding equivalent [*32] educational background. *See* Chen Aff., Ex. B & C. n6 Informal statements from the agency are not binding and are not a proper basis for denying the agency the deference it is otherwise due. *Chan v. Reno*, 113 F.3d

1068, 1073 (9th Cir. 1997) ("[U]npublished precedent is a dubious basis for demonstrating the type of inconsistency which would warrant rejection of deference.") (internal quotation marks and citation omitted); *Kwan v. Donovan*, 777 F.2d 479, 482 (9th Cir. 1985); *R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1022 (D. Haw. 2000). Thus, I find the record in this case fails to create a genuine issue of disputed material fact regarding whether the agency's interpretation of its statute and regulations was arbitrary and capricious.

> n6 During a meeting between the American Immigration Lawyers Association and CIS representatives on September 22, 2005, the agency was asked whether a single equivalent degree is required or whether a combination of educational experiences are properly considered in evaluating employment-based visa petitions. The agency responded: "There has been a difference of opinion on this issue internally as []CIS. That difference is being worked out and []CIS representatives expect []CIS to issue and interpretive memo on educational degrees." Chen Aff., Ex. B at 4-5.

[*33]

At oral argument, defendants questioned the propriety of upholding interpretations of substantially similar language as requiring a single degree in one context but allowing consideration of combined educational experiences in another. Though I recognize the apparent inconsistency, this result is easily explained in light of the difference between the texts being interpreted and the level of deference properly afforded the agency. Where the agency is interpreting its statute and regulations, it must determine Congress's intent or its own intent-areas where it has specific expertise. On the other hand, as discussed at length above, the visa petitioner defines the labor certification requirements and therefore, where ambiguous, those requirements must be interpreted in light of the petitioner's intent. This distinction makes all the difference in this case. Thus, it is perfectly consistent to uphold the agency's single-degree interpretation in relation to the "professional" classification while at the same time rejecting this

interpretation in relation to the "skilled worker" petition.

D.) "Member[] of the Professions Holding Advanced Degrees"

Finally, SnapNames sought to have [*34] Mr. Agarwal classified as a "member[] of the professions holding advanced degrees or their equivalent" under 8 U.S.C. § 1153(b)(2)(A). The regulations define "advanced degree" as "any United States academic or professional degree or a foreign equivalent degree above that of baccalaureate." 8 C.F.R. § 204.5(k)(2). An alien can also be classified under this provision if he has a "United States baccalaureate degree or a foreign equivalent degree followed by at least five years of progressive experience." *Id.*

Again, interpreting the relevant statutory and regulatory provisions, the AAO denied SnapNames's petition finding Mr. Agarwal does not have the equivalent of an American baccalaureate degree. Consistent with my conclusion above, I find the agency's interpretation on this point is also entitled to deference.

**III. Conclusion**

As is clear from the foregoing discussion, the key to this case is the proper level of deference afforded to the agency. In interpreting the labor certification requirements, the agency is not entitled to much, if any, deference. These requirements were specified by SnapNames and fall outside the [*35] agency's area of

expertise. Therefore, even though the agency must interpret these requirements, to do so in light of its understanding of similar but inapplicable statutory provisions instead of SnapNames's intent, where clear evidence of such exists, was arbitrary and capricious. On the other hand, where the agency's decision depends on an interpretation of its statute and regulations, it is afforded great deference and must be upheld if reasonable. Here, the agency's interpretation of the statutory and regulatory educational requirements for "professionals" and "members of the profession holding advanced degrees" was reasonable. Therefore, as there are no material disputes of fact involved in the issues presented by the parties but only questions of law properly decided by the court, SnapNames's motion for summary is GRANTED IN PART as to its "skilled workers" petition and DENIED IN PART as to the "professional" and "member of the professions holding advanced degrees" petitions. Likewise, defendants' cross motion for summary judgment is DENIED IN PART as to the "skilled worker" petition and GRANTED IN PART as to the other employment-based visa categories.

IT IS SO ORDERED.  [*36]

DATED this 30th day of November, 2006.

/s/ Michael W. Mosman

United States District Court

U.S. Department of Homeland Security

**‖ ‖‖‖**

20 Mass Ave., N.W., Rm 3000
Washington, DC 20529



**U.S. Citizenship
and Immigration
Services**

FILE:

Office: NEBRASKA SERVICE CENTER     Date: **JUN 1 4 2007**

IN RE:     Petitioner:
          Beneficiary:

PETITION:    Immigrant Petition for Alien Worker as a Skilled Worker or Professional Pursuant to
Section 203(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(3)

ON BEHALF OF PETITIONER:

JAQUELINE A. WOOD
207 PARFITT WAY SW, STE. 1B
BAINBRIDGE ISLAND, WA 98110

INSTRUCTIONS:

This is the decision of the Administrative Appeals Office in your case. All documents have been returned
to the office that originally decided your case. Any further inquiry must be made to that office.

Robert P. Wiemann, Chief
Administrative Appeals Office

Page 2

**DISCUSSION:** The employment-based immigrant visa petition was denied by the Acting Director, Nebraska Service Center, and is now before the Administrative Appeals Office (AAO) on appeal. The appeal will be sustained. The petition will be approved.

The petitioner is a seafood importing and distribution firm. It seeks to employ the beneficiary as a product manager / sales representative. As required by statute, the petition was accompanied by certification from the Department of Labor (DOL). The director denied the petition because she determined that the petitioner failed to demonstrate that the beneficiary had the required educational credentials as stated on the approved labor certification. The director concluded that the petitioner had not established that the beneficiary was eligible for the visa classification sought.

On appeal, the petitioner, through counsel, submits additional evidence and asserts that the beneficiary has the necessary educational credentials to meet the qualifications set forth in the approved labor certification.

Section 203(b)(3)(A)(i) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1153(b)(3)(A)(i), provides for the granting of preference classification to qualified immigrants who are capable, at the time of petitioning for classification under this paragraph, of performing skilled labor (requiring at least two years training or experience), not of a temporary nature, for which qualified workers are not available in the United States.

Section 203(b)(3)(A)(ii) of the Act, 8 U.S.C. § 1153(b)(3)(A)(ii), provides employment based visa classification to qualified immigrants who hold baccalaureate degrees and who are members of the professions.

To be eligible for approval, a beneficiary must have the education and experience specified on the labor certification as of the petition's filing date. The filing date of the petition is the initial receipt in the Department of Labor's employment service system. *See* 8 C.F.R. 204.5(d); *Matter of Wing's Tea House,* 16 I&N 158 (Act. Reg. Comm. 1977). In this case, that date is November 13, 2001.

To determine whether a beneficiary is eligible for an employment based immigrant visa as set forth above, Citizenship and Immigration Services (CIS) must examine whether the alien's credentials meet the requirements set forth in the labor certification. The Application for Alien Employment Certification Form ETA-750A, items 14 and 15 set forth the minimum education, training, and experience that an applicant must have for the position of product manager / sales representative. They contain the following information:

14.                              U.S. or foreign equivalent

| | | | |
|---|---|---|---|
| Education | *College* | | *College Degree required* |
| | 4 | | Bachelor's Degree |
| | | | *Major Field of Study* |
| | | | Business or related field |

| | | | |
|---|---|---|---|
| Experience | Job Offered | Related Occupation | Related Occupation |
| | Yrs. | Yrs. | Sales/marketing/product |
| | 5    or | 5 | management |

Page 3

15. Other Special Requirements

> Five [sic] experience with seafood industry sales/marketing/product management including sourcing and sales of finfish, shellfish & other seafood products for both domestic and Asian markets. Required sales experience includes working with US corporate customers having a minimum of $75 million in annual sales. References required.

In this matter, the beneficiary's experiential qualifications are not in dispute, only his academic credentials. As evidence of the beneficiary's formal education, the petitioner submitted a copy of the beneficiary's grade transcript listing the courses and credits completed from the University of British Columbia. The transcript indicates that he attended the winter session of 1985-1986. A copy of the grade transcript from Simon Fraser University, British Columbia, was also provided, reflecting that the beneficiary was enrolled for the 1986-1987 academic year in the business administration program. A grade transcript from the British Columbia Institute of Technology (BCIT) was additionally provided. It indicates that the beneficiary was enrolled during the 1987-1988 and 1988-1989 academic years, culminating in the award of a Diploma of Technology. A copy of the diploma has been provided and reflects that the beneficiary received it in June 1989, completing a course of study in marketing management, advertising and sales promotion option.

The petitioner also submitted a credential evaluation report, dated February 25, 1997, from Bradley Spencer of the Foundation for International Services, Inc. The evaluation cites the beneficiary's academic study at the University of British Columbia and determines that it represents the equivalent of one year of university-level credit from an accredited college or university in the United States. Mr. Spencer also determines that the beneficiary's studies at Simon Fraser University during the 1986-1987 academic year is the equivalent to the completion of one year of university-level credit from an accredited college or university in the United States. Mr. Spencer additionally determines that the beneficiary's completion of a course of study at the British Columbia Institute of Technology and subsequent Diploma of Technology in Marketing Management Advertising and Sales Promotion Option awarded in June 1989 represents the equivalent to an associate's degree (two years) in marketing management with a concentration in advertising and sales from an accredited community college in the United States.

Following an examination of the beneficiary's certificate of competency as a Fishing Master Class III, copies of candidates record of examinations, a radio operator's license, and the beneficiary's resume detailing his work history, together with his academic studies, Mr. Spencer concludes that:

> The [beneficiary] has the equivalent of four years of lower division, university-level credit from an accredited college or university in the United States and has, as a result of his educational background and employment experiences (3 years of experience = 1 year of university-level credit), an educational background the equivalent of an individual with a bachelor's degree in management science with an emphasis in marketing from an accredited college or university in the United States.

In response to the director's request for additional evidence relating to the beneficiary's academic qualifications, the petitioner, through counsel, provided a second evaluation, dated March 30, 2005, from Dr. Gerald L. Itzkowitz of Morningside Evaluations and Consulting. Reviewing the academic credentials of the beneficiary, Dr. Itzkowitz determines that the beneficiary completed two semesters of coursework at the University of British Columbia, two semesters of coursework at Simon Fraser University and the equivalent

Page 4

of three years of coursework in a two year program at the British Columbia Institute of Technology.
Cumulatively, Dr. Itzkowitz concludes that the beneficiary has "attained the equivalent of a Bachelor of Arts
degree in Marketing from an accredited institution of higher education in the United States."

The petitioner also provided a letter, dated April 25, 2005, from Val Karpinsky, the registrar at the British
Columbia Institute of Technology, who stated that it is "our opinion that the beneficiary's studies at BCIT,
combined with his other university studies, represents the equivalent of the necessary four years of Canadian
post secondary education at the general business bachelor's level." He further stated that some students from
BCIT had been accepted into the graduate program at Simon Fraser University. An additional letter, dated
April 21, 2005, from the international student advisor at "City University" in Bellevue, Washington, is also
contained in the record. It congratulates the beneficiary for being admitted to the MBA program based on his
completion of four years of university level studies culminating in his Diploma of Technology from BCIT.

Finally, the petitioner supplied a listing of applicants who were not hired and the reasons for rejection, as well
as copies of its reduction in recruitment request directed to the DOL and a copy of the notice of posting,
which both reflect that the certified position was described as requiring either a bachelor's degree or
equivalent qualifications.

The director denied the petition on August 6, 2005. The director found that the evidence submitted did not
meet the requirements of the approved labor certification because the beneficiary does not possess a U.S.
bachelor's degree or a foreign equivalent degree as required by the ETA 750 and applicable regulations. The
director determined that neither the terms of the labor certification nor the applicable regulations permit CIS
to allow the acceptance of an equivalence in the form of a combination of formal education and/or
employment experience. The director also determined that the petitioner's request for consideration of the
beneficiary as a skilled worker is not applicable as the petitioner had not established that the beneficiary met
the educational requirements of the ETA 750.

On appeal, counsel asserts that proper consideration was not given to the academic evaluations in
recognizing that the beneficiary had attained the U.S. equivalent of a bachelor's degree. She asserts that
his diploma from BCIT could be considered a single source bachelor's degree because it had recognized a
credit transfer of 30 hours. Counsel further maintains that the beneficiary qualifies for a visa
classification as both a professional under section 203(b)(3)(A)(ii) of the Act and as a skilled worker
pursuant to section 203(b)(3)(A)(i) of the Act.

It is noted that CIS is bound to follow the pertinent regulatory guidelines pursuant to 203(b)(3)(A)(ii) of the
Act. CIS jurisdiction includes the authority to examine an alien's qualifications for preference status and to
investigate the petition under section 204(b) of the INA, 8 U.S.C. § 1154(b). This authority encompasses the
evaluation of the alien's credentials in relation to the minimum requirements for the job, even though a labor
certification has been issued by the DOL. *Madany v. Smith*, 696 F.2d 1008 (D.C. Cir. 1983); *K.R.K. Irvine,
Inc. v. Landon*, 699 F.2d 1006 (9th Cir. 1983); *Stewart Infra-Red Commissary v. Coomey*, 662 F.2d 1 (1st Cir.
1981); *Denver v. Tofu Co. v. INS*, 525 F. Supp. 254 (D. Colo. 1981); *Chi-FengChang v. Thornburgh*, 719 F.
Supp. 532 (N.D. Tex. 1989). CIS will not accept a degree equivalency or an unrelated degree when a labor
certification plainly and expressly requires a candidate with a specific degree, even where a classification
may not require a bachelor's degree. In this case, the ETA 750 states that the proffered position requires a
U.S. bachelor's or foreign equivalent, not a combination of certificates, lesser degrees, or work
experience, which could be considered the equivalent of a bachelor's degree in a particular field.

Page 5

In evaluating the beneficiary's qualifications, CIS must look to the job offer portion of the labor certification to determine the required qualifications for the position. CIS may not ignore a term of the labor certification, nor may it impose additional requirements. *See Matter of Silver Dragon Chinese Restaurant*, 19 I&N Dec. 401, 406 (Comm. 1986).

The regulation at 8 C.F.R. § 204.5(l)(3)(ii)(C) also provides in pertinent part:

> If the petition is for a professional, the petition must be accompanied by evidence that the alien holds a United States baccalaureate degree or a foreign equivalent degree and by evidence that the alien is a member of the professions. Evidence of a baccalaureate degree shall be in the form of an official college or university record showing the date the baccalaureate degree was awarded and the area of concentration of study. To show that the alien is member of the professions, the petitioner must submit evidence showing that the minimum of a baccalaureate degree is required for an entry into the occupation.

The regulation at 8 C.F.R. § 204.5(l)(3)(ii) further states in pertinent part:

> (B) *Skilled workers*. If the petition is for a skilled worker, the petition must be accompanied by evidence that the alien meets the educational, training or experience, and any other requirements of the individual labor certification, meets the requirements for Schedule A designation, or meets the requirements for the Labor Market Information Pilot Program occupation designation. The minimum requirements for this classification are at least two years of training or experience.

We find that "an official college or university record showing the date the baccalaureate degree was awarded and the area of concentration or study" is applicable to what constitutes evidence of a degree. Because neither the Act nor the regulations indicate that a bachelor's degree must be a United States bachelor's degree, as noted above, CIS will recognize a foreign equivalent bachelor's degree to a United States baccalaureate. The above regulation uses the singular description of a foreign equivalent degree. Thus, the plain meaning of the regulatory language sets forth the requirement that a beneficiary must produce one degree that is determined to the foreign equivalent of a U.S. baccalaureate degree in order to be qualified as a professional for third preference visa category purposes. While we do not dispute that a baccalaureate degree may be earned, in part, through the recognition of credit transfers from other colleges or universities, we observe that the record indicates that the transcript from Simon Fraser University recognized that the beneficiary had transferred 30 hours of undergraduate work to be applied to that institution. We do not see a similar clear notation on the BCIT transcript although it is noted that the registrar's letter refers to "20 business related transfer credits."

It is further noted that the Spencer evaluation surmises that the beneficiary's diploma from BCIT is the U.S. equivalent of a two-year associate's degree and, that when combined with experience and the other two years of undergraduate studies may be equated to the U.S. equivalent of a bachelor's degree in management science with an emphasis in marketing. This evaluation employed the formula to equate three years of experience for one year of education, but that equivalence applies to non-immigrant H1B petitions, not to immigrant petitions. *See* 8 CFR § 214.2(h)(4)(iii)(D)(5). The other evaluation asserts that the beneficiary's credits attributable to his study at BCIT represented three years of coursework in a two-year program and that with

Page 6

his academic studies at the other two institutions represent the U.S. equivalent of a bachelor of arts degree in marketing. CIS may, in its discretion, use as advisory opinions statements submitted as expert testimony. However, where an opinion is not in accord with other information or is in any way questionable, the CIS is not required to accept or may give less weight to that evidence. *Matter of Caron International*, 19 I&N Dec. 791 (Comm. 1988).

That said, it is noted that the item 14 of the ETA-750A requires that an applicant for the position of product manager / sales representative to have 4 years of college and a bachelor's degree in business or a related field. Above these descriptions, and within the box containing instructions to state the "minimum education, training and experience" is the phrase "U.S. or foreign equivalent." Taken together with the petitioner's evidence related to the notice of posting and advertisements in connection with the labor certification process, which all contain the wording "Bachelor's Degree in Business or related field or equivalent," and not foreign equivalent "degree," it is reasonable in this particular circumstance, to find that the visa classification of "skilled worker" is applicable.[1] Thus, it may be concluded that the petitioner has established that the beneficiary is eligible for the skilled worker visa classification pursuant to section 203(b)(3)(A)(i) of the Act.

In visa petition proceedings, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. Here, that burden has been met.

---

[1] The proffered position requires a bachelor's degree and five years of experience. Because of those requirements, the proffered position would appear to be for a professional. DOL assigned the occupational code of 15-167.018, sales manager, to the proffered position. DOL's occupational codes are assigned based on normalized occupational standards. According to DOL's public online database at http://online.onetcenter.org/link/summary/11-2022,00#JobZone (accessed June 5, 2007) and its extensive description of the position and requirements for the position most analogous to the petitioner's proffered position, the position falls within Job Zone Four requiring "considerable preparation" for the occupation type closest to the proffered position. According to DOL, two to four years of work-related skill, knowledge, or experience is needed for such an occupation. DOL assigns a standard vocational preparation (SVP) range of 7-8 to the occupation, which means "[m]ost of these occupations require a four-year bachelor's degree, but some do not." Additionally, DOL states the following concerning the training and overall experience required for these occupations:

> A minimum of two to four years of work-related skill, knowledge, or experience is needed for these occupations. For example, an accountant must complete four years of college and work for several years in accounting to be considered qualified. Employees in these occupations usually need several years of work-related experience, on-the-job training, and/or vocational training.

*See id.*

The proffered position could also be properly analyzed as skilled worker since the normal occupational requirements do not always require a bachelor's degree but a minimum of two to four years of work-related experience. Therefore, CIS will examine the petition under the skilled worker category, which requires a showing that the alien has two years of training or experience and meets the specific education, training, and experience terms of the job offer on the alien labor certification application.

Page 7

**ORDER:**      The appeal is sustained.  The petition is approved.



PROVIDED BY
The leading
immigration
ILW.COM law publisher
http://www.ilw.com

U.S. Department of Justice

Immigration and Naturalization Service

HQ 70/23.1-P
HQ 70/6.1.3-P

Office of the Executive Associate Commissioner

*425 I Street NW*
*Washington, DC 20536*

AD 00-02

MAY - 9 2000

MEMORANDUM FOR ALL REGIONAL DIRECTORS

FROM:        Michael A. Pearson
             Executive Associate Commissioner
             Office of Field Operations

SUBJECT:     Transferring Section 245 Adjustment Applications to New or Subsequent Family
             or Employment-Based Immigrant Visa Petitions.

        This memorandum addresses issues relating to the *Adjudicator's Field Manual*, Chapter
23.2. Chapter 23.2 provides guidance on general adjustment of status issues. This memorandum
addresses instances where transferring a section 245 adjustment application (I-485) to a new or
subsequent family (I-130) or employment-based immigrant visa petition (I-140) are acceptable.
This policy conforms to the practice outlined in Operating Instruction (OI) 245.4(a)(6). Note
that OI 245.4(a)(6) is rescinded upon publication of this memorandum, and the Adjudicator's
Field Manual is updated at chapter 23.2.

        In Chapter 23 of the Adjudicator's Field Manual, a new section 23.2(k) is added to read
as follows:

**23.2 General Adjustment of Status Issues.**

    (k) <u>Transferring adjustment applications to new family or employment-based immigrant
visa petitions</u>. (1) <u>Background</u>. In November 1991, the Service published regulations
implementing the revised petitioning process for employment-based preference immigrants.
This action was needed for the Service to be in compliance with the 1990 Immigration Act. See
Service regulations at 8 CFR § 204.5(e). These regulations allow for priority date retention for
employment-based aliens under the INA § 203(b)(1), (2), and (3) for whom a subsequent
employment-based petition is filed, provided that the prior petition was not revoked or denied,
and provided that the visa category is current. This principle is also applicable to family-based
petitions in situations where a visa number is readily available.

Memorandum for all Regional Directors                                        Page 2
Subject:        Transferring Applications for Adjustment of Status to New
                Immigrant Petitions

    (2) Guidelines.  When an adjudications officer is presented with a second family or
employment-based visa petition filed after the submission of an adjustment application, the
question is:  Can the adjustment application, based on an approved immigrant petition (either I-
130 or I-140) with a current priority date, be transferred to a subsequent immigrant petition that
is approved with a current priority date?  In many instances, the answer is yes since the alien
continues to be eligible for the immigrant visa, provided the priority date is current at the time
the I-485 is transferred.  This does not constitute an unfair "bumping up" in the line of petitions
to be adjudicated.  Exceptions are found in cases involving automatic revocations of
employment-based petitions (See 8 CFR § 205.1(a)), fraud, or the denial of the first petition.
Officers will also note that a section 245 applicant is not precluded from substituting any other
immigration eligibility that may be available such as a special immigrant classification.
However, a priority date may not be transferred to another preference category.

    While the intent to work for the petitioning employer is a requirement for approval of the I-
485, there is no legal requirement that the beneficiary of an approved employment-based visa
petition work for the sponsoring employer before receiving permanent residence status.  In
addition, the transferring of the I-485 adjustment can be in both the Service's and the alien's
interest.  If the transfer request is credible and justified, the alien is not gaining a benefit that he
or she is not eligible for, especially when no change in the visa category is involved.  In such
cases, by allowing the transfer of adjustment cases to an eligible family or employment-based
petition the Service is saving itself time and work.

    As with the majority of Service adjudications, requests for transferring section 245
adjustments must be decided on a case-by-case basis to insure that the beneficiary is eligible for
the requested transfer.  Officers may request additional evidence should questions arise about
any aspect of the requested transfer.

    Transferring a second approved I-140 to a pending adjustment application is generally
available to the beneficiary until the I-485 is finally adjudicated.  The decision is final when
approved or denied (Form I-291) unless a motion to reopen is granted by the Service.  If the I-
485 is denied, the beneficiary may file a motion to reopen or reconsider pursuant to 8 CFR 103.5.
Such a motion must be filed within 30 days of the date of the denial of the I-485.

CC:  HQOPS
CC:  HQPDI; Please amend the AFM in the next INSERTS release.